# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### Wade v. Wade, 2012 IL App (1st) 111203

---

| | |
|---|---|
| Appellate Court Caption | D.T. WADE, Petitioner-Appellee, v. S.L. WADE, Respondent-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1203 |
| Filed | March 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from an order dissolving an agreed preliminary injunction entered in proceedings to dissolve the parties' marriage, the order was reversed and the cause was remanded for reinstatement and proceedings to return the parties to the status quo *ante* regarding the marital estate and to allow respondent a full evidentiary hearing on her need to preserve the marital estate pending the distribution of the parties' assets. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-D-11714; the Hon. Fe Fernandez, Judge, presiding. |
| Judgment | Reversed and remanded with instructions. |

Counsel on Appeal

Michael A. Haber, Lauren Bernay, and Mary Katherine Danna, all of Kalcheim Haber, LLP, of Chicago, for appellant.

James B. Pritikin, Sylvia A. Sotiras, and Michael D. Sevin, all of Nadler, Pritikin & Mirabelli, LLC, and Paul J. Bargiel, of Paul J. Bargiel, P.C., both of Chicago, for appellee.

Lester L. Barclay, of Barclay, Dixon & Smith, P.C., of Chicago, for child representative appellee.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.

Presiding Justice R. Gordon and Justice Garcia concurred in the judgment and opinion.

## OPINION

¶ 1    Respondent, S.L. Wade (S.L.), appeals from the trial court's retroactive vacation of an agreed preliminary injunction order entered between S.L. and petitioner, D.T. Wade (D.T.). We reverse and remand.

¶ 2    D.T. and S.L. were married on May 18, 2002, in Cook County, Illinois. The parties have two children, Z.B.D. Wade and Z.M.A. Wade. D.T. filed a petition for dissolution of marriage on May 27, 2008, seeking joint custody of the children. Respondent filed a counterpetition for dissolution of marriage on August 13, 2008, seeking sole custody. On March 29, 2010, D.T. filed a petition for sole custody and amended his petition for dissolution of marriage to reflect this change. The proceedings were bifurcated and a judgment dissolving the marriage was entered on June 25, 2010. After a lengthy custody trial, the court awarded sole custody of the children to D.T. We affirmed in *In re Marriage of D.T.W.*, 2011 IL App (1st) 111225.

¶ 3    Of relevance to this appeal, S.L. filed petitions seeking a preliminary injunction against D.T. alleging, among other things, that if D.T. was not enjoined from dissipating and transferring marital funds, S.L. would be irreparably damaged and without an adequate remedy at law by the time the financial issues presented in the divorce were settled or adjudicated.

¶ 4    On October 14, 2008, the parties entered an agreed preliminary injunction order (API). The terms of the API stated that D.T., his officers, agents, employees and attorneys were enjoined from selling or transferring any property or assets in D.T.'s possession or control until further order of the court. Additionally, only the parties could be signatories on their private bank wealth management account and any transactions from that account needed

mutual agreement. All of D.T.'s income from his commercial endorsements and 50% of D.T.'s income from his National Basketball Association (NBA) contract, dated July 12, 2006 (which has since expired), was to be deposited into a joint account where withdrawals were to be mutually agreed to by the parties. The remaining 50% of D.T.'s income from his NBA contract, dated July 12, 2006, was to pay for certain marital expenses. Any remaining funds after these payments and disbursements would be distributed 75% to D.T. and 25% to S.L. Each party was required to account to the other party every 30 days about its use of the funds.

¶ 5    On January 7, 2009, D.T. filed his first "Motion To Vacate Agreed Preliminary Injunction Entered October 14, 2008, And For Other Relief" (first motion to vacate). On February 5, 2009, the court entered an order resolving the issues in the first motion to vacate.

¶ 6    On July 22, 2009, D.T. filed his second "Motion To Vacate, Or In The Alternative, To Modify, the October 14, 2008 Agreed Preliminary Injunction Order And For Other Relief" (second motion to vacate). In count I of the two-count motion, D.T. argued that the API was void because it was entered in response to S.L.'s amended petition for preliminary injunction, which was not filed with the clerk's office. In count II, D.T. argued that if the court did not find the API void, the API should be modified because "a substantial change in circumstances" had occurred since the API's entry. Specifically, the "substantial change in circumstances" included the timing and amount of his 2009 NBA salary and endorsement income. D.T. alleged that he would be left with insufficient cash flow to pay the expenses, litigation costs and other expenses addressed in the API, and that certain expenses addressed in the API no longer existed.

¶ 7    On February 26, 2010, the circuit court heard argument on D.T.'s second motion to vacate. Thereafter, the court entered an order denying count I of D.T.'s second motion to vacate. The court then began to hear evidence on the alternative request to modify the API. The parties did not finish presenting evidence, and the hearing was continued until July 26, 2010.

¶ 8    At numerous proceedings between July 26, 2010 and March 30, 2011, evidence was presented with regard to this matter. The record shows that the trial court initially indicated that it was conducting a modification hearing but later took the position that it had previously vacated the API when the parties appeared before the court on February 26, 2010, rather than simply denying count I of D.T.'s second motion to vacate and commencing and continuing the hearing on the issue of modification under count II.

¶ 9    The hearing was ultimately continued to March 30, 2011. By that date, D.T. had finished presenting evidence regarding the modification of the API, but S.L. had not. Before S.L. finished presenting her evidence, the court entered an order vacating the "API as to February 26, 2010." The court reasoned that it was obvious "that [the API] was not something that was functioning for either one of these parties. So what I am going to try to do is to try to set a temporary amount of support since the date when it became apparent that [the API] was not a working order." The court's order provided that D.T. continue to pay for certain expenses, including the house where S.L. lived, until the conclusion of the parties' property distribution hearings. The trial court also concurrently entered a support order requiring D.T. to pay S.L. $15,000 per month until their financial affairs were concluded.

¶ 10    On appeal, S.L. argues that the trial court erred in retroactively vacating the API because: (1) the March 30, 2011, order (March order) vacating the API was an improperly entered *nunc pro tunc* order; (2) S.L. was improperly denied her right to an evidentiary hearing on the necessity for a preliminary injunction; (3) the court vacated the API *sua sponte* without a pleading presented; (4) S.L. was deprived of her right to due process; and (5) the court erred by dissolving the API retroactively instead of prospectively.

¶ 11    Petitioner responds that the vacation was a proper exercise of judicial discretion because the trial court has the inherent power to vacate or modify a preliminary injunction, and the court's decision to vacate or modify the API was warranted under the facts of the case. Petitioner argues that if the trial court's decision is correct, it should not be reversed simply because the decision was based on incorrect reasoning. Petitioner contends that the March order was correctly entered because the status quo the preliminary injunction was intended to preserve no longer existed. At the time the API was entered, the parties were still married to each other, S.L. still had possession of their two children, and D.T.'s NBA contract, dated July 12, 2006, was still in effect. However, by March 30, 2011, the parties were no longer married, D.T. had been awarded sole custody of their children, and D.T.'s NBA contract, dated July 12, 2006, had expired. Petitioner adds that any error the trial court may have committed by making the March order retroactive is harmless because the trial court still required D.T. to continue to make payments on certain expenses. Petitioner also argues that there is nothing in the record demonstrating S.L.'s need for continued preliminary injunctive relief.

¶ 12    S.L. replies that the changed factual circumstances listed by D.T. are not relevant to the injunction. First, the March order was retroactive to February 26, 2010, and the changes in the factual circumstances occurred after February 26, 2010. Second, the financial circumstances that originally gave rise to the API are the true status quo and are unaffected by the changed factual circumstances. In particular, S.L. contends that the parties' divorce did not resolve any financial issues and left all orders in effect, including the API. S.L. further argues that the March order is not harmless because the trial court's $15,000-per-month support order pales in comparison to the $14 million that should have been escrowed under the terms of the API. S.L. also argues that the March order vacating the API leaves the marital accounts unprotected, potentially leaving no marital assets for division at the conclusion of the property distribution hearings.

¶ 13    A trial court's decision to dissolve an injunction will be reversed where the court abuses its discretion. *Rochester Buckhart Action Group v. Young*, 379 Ill. App. 3d 1030, 1034 (2008). A trial court abuses its discretion where no reasonable person would agree with its position. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 646 (2009) (citing *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176 (1997)).

¶ 14    A party seeking a preliminary injunction must establish: (1) a clear and ascertainable right in need of protection; (2) irreparable harm without relief; (3) no other adequate remedy at law; and (4) a substantial likelihood of success on the merits of the case. *In re Marriage of Winter*, 387 Ill. App. 3d 21, 27-28 (2008) (citing *In re Marriage of Hartney*, 355 Ill. App. 3d 1088, 1089 (2005)). Where a party to a divorce requests an order preserving the status quo between the parties and protecting property that would be dissipated, injunctive relief may

be granted even if the movant's ultimate success on the merits is in serious doubt. *In re Marriage of Schmitt*, 321 Ill. App. 3d 360, 372 (2001) (citing *In re Marriage of Grauer*, 133 Ill. App. 3d 1019, 1025 (1985)).

¶ 15    Here, we believe that the trial court abused its discretion by retroactively vacating the API. Some remarks throughout the evidentiary hearings to the contrary, it appears that the trial court ultimately determined it intended to vacate the agreed injunctive order on February 26, 2010, and then conduct a hearing to determine what type of order should be entered in its place. This is despite the fact that neither the written order entered on that date nor the court's remarks on the record support this conclusion. Rather, the record shows that the court denied count I of the motion to vacate and began an evidentiary hearing on the request to modify the API.

¶ 16    Ultimately, the court appears to rely on an understanding that both parties agreed that the current order was no longer viable. However, it is patently clear that S.L. never agreed to a vacatur of the agreed order, only to a modification. In fact, the trial court clearly stated at the February 26, 2010, hearing that the parties had agreed to modify the API and were to present evidence on the question of what these modifications should be:

> "However, Count 2, I think both parties have filed pleadings agreeing to modify–asking to modify. It was a preliminary injunction. It's definitely not a final order. The parties agree that it could be modified and they all signed off on it. And, in fact, I think both of them seemed to think that it should be modified. There certainly seem to be some changes in circumstance, and I think [there] seems to be some basic problems with the original order in terms of actually applying to their unusual and particular circumstances. So I am going to allow the motion to modify based on–well, actually based on whatever each one of them wants to tell me what they should do as far as being–having the vacate modified, okay."

¶ 17    The record shows S.L. strongly objected to a dissolution of the restraining provisions with regard to the marital assets and the escrow of D.T.'s salary. Therefore, as this was not done by way of an agreement, the injunctive aspects of the order could not have been vacated without an appropriate basis. The trial court made no findings on the record in this regard other than to state in conclusory terms that the order was no longer functioning for either one of the parties. See *Kraft v. Solon*, 32 Ill. App. 3d 557, 561 (1975) (while a trial court possesses the inherent power to dissolve a preliminary injunction, "[t]here must be [a] sufficient basis in the record to support the action taken by the court"). Specifically, we are troubled that the order dissolving the injunction made no provisions for the disposition of the escrowed assets or for the escrow of marital assets going forward, at least until the date of the dissolution of marriage. The effect of the court's order was to vitiate the provision that preserved the marital assets and the payment of expenses, leaving the estate unprotected. See *Hartney*, 355 Ill. App. 3d at 1090 (recognizing the need to protect the status quo of financial assets in marital estates during the pendency of divorce proceedings).

¶ 18    Further, by retroactively vacating the API in the middle of the evidentiary hearing, the court denied S.L. the opportunity to present evidence to show why the protection offered by the API should not be dissolved. Specifically, S.L. alleged that the injunctive restraints

should remain in place with regard to the parties' marital assets because she had evidence showing D.T. had been rapidly dissipating their marital assets prior to the entry of the API and she lacked an adequate remedy at law. See *Hartney*, 355 Ill. App. 3d at 1090-91; *In re Marriage of Schmitt*, 321 Ill. App. 3d 360, 371-72 (2001); see also *Grauer*, 133 Ill. App. 3d at 1024-25. S.L. was entitled to present evidence to support her claims of the necessity of an injunction but was denied the opportunity to do so. See *Hartney*, 355 Ill. App. 3d at 1090-91 (trial court erred in dismissing wife's petition for a preliminary injunction without an evidentiary hearing).

¶ 19    Finally, there is also no support in the record for the retroactive date of February 26, 2010, other than that it was the date the trial court began hearings on D.T.'s second motion to vacate. The trial court did not take into account that the marital dissolution was completed at a later date. As a result, the effective date of the order vacating the API was a full five months prior to the date of the dissolution of marriage. Arguably, during that time D.T.'s substantial salary and endorsement income were still marital assets, subject to division. Should the trial court's order vacating the API stand, those assets would not be protected by an injunctive order.

¶ 20    For the reasons stated above, the court's March 30, 2011, order dissolving the API is reversed and the cause is remanded with directions to reinstate the API. We order the trial court to take the steps necessary to return the parties to the status quo *ante* with regard to the marital estate and to allow S.L. the benefit of a full evidentiary hearing on her need to preserve the marital estate during the pendency of the remaining proceedings.

¶ 21    Reversed and remanded with instructions.